# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

TODD EVANS,

    Plaintiff

v.

JAMES DZURENDA, et. al.,

    Defendants

Case No.: 3:18-cv-00283-RCJ-WGC

**Order**

Re: ECF No. 5

Before the court is Plaintiff's motion requesting appointment of a guardian ad litem. (ECF No. 5.)

## I. BACKGROUND

Plaintiff filed his application for leave to proceed in forma pauperis (IFP) and pro se civil rights complaint on June 14, 2018. (ECF Nos. 1, 1-1.) Plaintiff's complaint alleges that prison officials have a policy of delaying and denying treatment under Medical Directive 219, which pertains to the treatment of prisoners with hepatitis C. Plaintiff has hepatitis C, and alleges that he has been denied treatment, including new drug therapy, which has made his condition uncontrolled and caused him to develop multiple medical issues including infection. He also alleges a delay in treatment of 17 months for severe issues with his spine, including an MRI and surgery. As a result, he alleges that he has suffered in pain and has nerve damage. He also claims he was denied medication after his surgery as punishment for filing medical grievances.

On October 1, 2018, he filed a motion for appointment of a guardian ad litem under Federal Rule of Civil Procedure 17. (ECF No. 3.) In that motion, Plaintiff states that since filing his complaint, his health deteriorated and he was unable to write due to neurological damage

affecting his eyesight, concentration, and motor skills. He had a law library worker, inmate Roger Hull, help prepare the motion. He apprised the court that he was diagnosed with a lesion on his brain and plans were being made to remove it. He noted he was in a segregated unit and did not have the ability to have another inmate assist him regularly.

The court issued an order on April 11, 2019, noting that Plaintiff's complaint must be screened under 28 U.S.C. § 1915A. The court undertook a preliminary review of Plaintiff's complaint and advised him that it is likely his complaint will be dismissed with leave to amend; however, in light of the filing of the motion for appointment of guardian ad litem, the court deferred screening until that motion is resolved. (ECF No. 4.) The court set a hearing on the motion to determine whether there is a substantial question regarding Plaintiff's mental competence, and allowed Plaintiff to file any documentation supporting his motion in advance of the hearing. The court also directed the Attorney General's Office to enter a limited notice of appearance for the purpose of addressing Plaintiff's mental competence and medical condition, and to file under seal any pertinent medical or mental health records.

On April 16, 2019, Plaintiff filed a "motion to support guardian ad litem" along with supporting medical records. (ECF Nos. 5, 5-1.) The court construed this subsequent motion as superseding the original motion for appointment of guardian ad litem. Plaintiff stated that he suffers from a serious illness: a cystic sellar mass at the base of his brain that resulted in his inability to litigate this matter. He indicated that he had been approved for surgery for removal of the tumor. He reported that he suffered from abdominal spasms, and experienced flashes of light that would come and go in his right eye. He stated that he was unable to write most days because the nerves in his arms cause numbness.

In response to the court's order, the Attorney General's Office filed 10 pages of mental health records from July, August and October of 2017. (ECF No. 9.) No medical records, and in particular, no medical records related to Plaintiff's tumor/cyst, were filed by the Attorney General's Office. Therefore, the court directed that such records be filed in advance of the hearing. (ECF No. 11.) The Attorney General's Office filed a supplement on May 22, 2019. (ECF No. 12.)

The court held a hearing on Plaintiff's motion on May 24, 2019, to determine whether there is a substantial question as to Plaintiff's mental competency. (ECF No. 14.) Plaintiff pointed to continuing issues with his eyesight that he claimed impacted his ability to concentrate and read and write. The court found the record insufficient to make a determination regarding whether Plaintiff is competent to litigate this case. The court ordered the defense to arrange for Plaintiff to undergo a medical and mental health assessment, and file a comprehensive report identifying all of Plaintiff's current medical and mental health conditions, the treatment plans, and the impact these conditions might have on his ability to litigate this case. The court allowed the Defendants to file a memorandum in support of their position, and Plaintiff was permitted to file a response.

Defendants filed bates-stamped copies of Plaintiff's medical and mental health records under seal. (ECF Nos. 15, 16.) Defendants also filed their memorandum where they argue that Plaintiff's medical records show he has the ability to understand and participate in the litigation process. (ECF No. 18.) They argue that his medical kites show he is capable of writing and he can understand and participate in his medical treatment. (ECF No. 19-1.) In addition, in his visit with Dr. Carol Alley on July 5, 2019, Dr. Alley found Plaintiff had "meticulous documentation of finger stick blood sugars" and "legible handwriting," and that he was able to easily read from

printed material. (ECF No. 19-2.) In addition, in his mental health assessment, Dr. Jose A. Capriles stated Plaintiff had good insight about his medical and mental health issues, and was able to concentrate. (ECF No. 19-3.) While Dr. Capriles stated Plaintiff may be suffering from a depressed mood, Defendants argue that nothing supports Plaintiff's claim of incompetence.

Plaintiff filed a reply brief. (ECF No. 24.) Plaintiff points out that Dr. Alley did not submit a report or even examine Plaintiff, as the court ordered. Instead, her progress notes state that Plaintiff was scheduled to be seen "per the A.G." to see if Plaintiff can read and write. She did not provide a picture of Plaintiff's medical condition and diagnoses, assess his medical condition or discuss future treatment. Plaintiff states that he has been referred to an ophthalmologist and optometrist, but he still has not been seen be either provider. He argues that Dr. Alley's conclusions are vague and ambiguous. Plaintiff also asserts that most of his kites are written by other inmates, and in any event, being able to write a few lines is not the same as being required to write numerous pages under deadlines.

With respect to Dr. Capriles, Plaintiff points to the finding that Plaintiff presented with problems with motor skills due to his physical ailments. While Dr. Capriles said Plaintiff had good eye contact and concentration, Plaintiff argues that the report does not state how long Dr. Capriles spent with Plaintiff.

**II. DISCUSSION**

"The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2).

The preliminary step is to have a hearing to determine whether there is a "substantial question" regarding mental competence. *See Harris v. Mangum*, 863 F.3d 1133, 1138 (9th Cir.

2017) (citing *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005)). If there is a substantial question, then the court will proceed to hold a competency hearing. *Id*. In federal civil litigation, the court focuses on whether the litigant is mentally competent to understand the nature and effect of the litigation that has been instituted. *See e.g. U.S. v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986) (citations omitted). A litigant may raise a substantial question as to competency by way of a personal declaration, the declaration of a lay non-party, the declaration or letter of a treating healthcare professional, or medical records. *See Allen*, 408 F.3d at 1152.

Preliminarily, Plaintiff is correct that Defendants did not follow the court's order with respect to the physical examination and assessment. The court directed the defense to have Plaintiff undergo both a medical and mental health evaluation, and to then submit a report that outlined Plaintiff's current medical and mental health conditions, the treatment plans, and impact these conditions might have on his ability to litigate. The mental health assessment achieves this, but the progress notes from Dr. Alley fall short. First of all, Dr. Alley notes that she was asked to see Plaintiff by the Attorney General's Office to see if Plaintiff could read and write. This does not reflect the court's order. In addition, Dr. Alley did not physically examine Plaintiff.

Nevertheless, based on the information in the record, including Plaintiff's medical records and the progress notes from his visit with Dr. Alley and the mental health evaluation by Dr. Capriles, the court concludes there is not a substantial question regarding Plaintiff's competency at this time.

There is no doubt that Plaintiff has multiple serious medical conditions. He had lumbar spine surgery, but still experiences lumbar spine pain. He has neck pain with associated tingling and numbness, and has been recommended for cervical spine surgery. He has had issues with his left knee. He recently underwent surgery for resection of a pituitary cyst. He has obstructive

5

sleep apnea. His records reflect some gastrointestinal issues. He also has hepatitis C. He has apparently been referred to an ophthalmologist and optometrist concerning his complaints that he sees spots and flashes of light, even following resection of the cyst. While Dr. Alley did not perform a full physical examination as was directed, Dr. Alley did observe that Plaintiff was alert and oriented and verbally communicative. She described his documentation of his blood sugar tests as "meticulous." He had legible handwriting, and was easily able to read out loud from printed material provided. He could see well enough to read that material.

When Plaintiff was seen for a psychological assessment on May 1, 2019, he denied a history of self-harm; he denied having hallucinations or psychotic episodes; his appearance was appropriate and he was cooperative and respectful; he had positive eye contact and coherent speech; he had a euthymic mood and affect, and linear thought process; there was no evidence of thought disturbance; he had good insight and judgment and his ability to concentrate and stay on point were fair; he was oriented as to time, person and place. He had symptoms of major depressive disorder and was encouraged to reach out if his symptoms increased.

At his July 3, 2019 assessment with Dr. Capriles, Plaintiff reported he had trouble reading and writing due to light flashes in his eyes and numbness in his arms. He also reported having issues as a result of being in isolation for so long. Dr. Capriles described Plaintiff as appropriately dressed and oriented; he had logical thought processes and organization; he had fair judgment and good insight; he was forthright and cooperative and answered all questions; he had a "so/so mood" and congruent affect; he did present problems with motor skills due to physical ailments; he had good eye contact and tone, and was able to concentrate. Dr. Capriles assessed that Plaintiff could be experiencing adjustment disorder with depressed mood as a result

of his ongoing serious medical conditions and/or segregated housing status. Plaintiff was offered and accepted mental health services.

While Plaintiff has multiple serious medical conditions and adjustment disorder with a depressed mood, there is no evidence that Plaintiff does not understand the nature and effect of this litigation. Therefore, his motion for appointment of guardian ad litem is denied.

The court will consider, however, whether counsel should be appointed, at least for the limited purpose of taking this case through screening and the early mediation process.

"[A] person [generally] has no right to counsel in civil actions." Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)). 28 U.S.C. § 1915(e)(1), however, does allow the court to "request an attorney to represent any person unable to afford counsel." That being said, the appointment of counsel in a civil case is within the court's discretion and is only allowed in "exceptional cases." *See Palmer*, 560 F.3d at 970 (citations omitted); *see also Harrington v. Scribner,* 785 F.3d 1299, 1309 (9th Cir. 2015). In "determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Palmer*, 560 F.3d at 970 (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)); *see also Cano v. Taylor,* 739 F.3d 1213, 1218 (9th Cir. 2015). "Neither of these considerations is dispositive and instead must be viewed together." *Id.* (citing *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986)).

The court did undertake a preliminary review of Plaintiff's complaint. It is not clear at this point whether Plaintiff will succeed on his claims, but it is likely he will proceed with a claims of deliberate indifference to serious medical needs relative to the alleged delay in treating his back issues, as well as the claim he was denied treatment for hepatitis C, at least as to some

defendants. The court is not making a decision as to the merits at this juncture, but if his claims that treatment for his back was delayed for 17 months, and that he was refused treatment for his hepatitis C are believed, he may well be successful.

The court appreciates the difficult circumstances that Plaintiff's medical and mental health conditions have imposed on his ability to litigate this matter pro se. He has had multiple surgeries, and is slated to have another major surgery on his cervical spine soon. He is still dealing with a multitude of medical issues that appear to affect his ability to read and write to the extent that will be required to litigate this action. At the hearing, he stated that he has difficulty seeing because his vision issues persist even after the surgery to remove the cyst. His hands and arms get numb and experience spasms. He indicated he could not read for more than a few minutes, and he has good days and bad days. His mental health providers attest that his medical conditions have also taken a toll on his mental health.

The court finds that Plaintiff currently presents a unique set of circumstances that warrant the appointment of an attorney to represent Plaintiff for the limited purpose of assisting him through the screening and early mediation stage of this case. As such, the court will refer Plaintiff's case to the court's pro bono program to attempt to find an attorney to accept Plaintiff's case. The court will defer screening Plaintiff's complaint until it is determined whether an attorney from the court's pro bono program will accept this limited appointment.

### III. CONCLUSION

Plaintiff's motion for appointment of a guardian ad litem (ECF No. 5) is **DENIED;** however, the case is referred to the court's pro bono program adopted in General Order 2017-07 for the purpose of attempting to identify an attorney willing to be appointed for the limited purpose of assisting Plaintiff through the screening and early mediation stage of this case. The

court will defer screening Plaintiff's complaint until it is determined whether an attorney from the court's pro bono program will accept this limited appointment. By referring this case to the pro bono program, the court is not expressing an opinion as to the merits of the case.

The Clerk shall forward this Order to the pro bono liaison.

**IT IS SO ORDERED**.

Dated: August 8, 2019

_____
William G. Cobb
United States Magistrate Judge